## PORTER v. BOARD OF PUBLIC INSTRUCTION OF DUVAL COUNTY.

No. 61-1932-L.

Circuit Court, Duval County.

January 22, 1962.

Alfred R. Taylor, Jacksonville, for petitioner.

Elliott Adams, Jacksonville, for respondents.

ROGER J. WAYBRIGHT, Circuit Judge.

On December 8, 1961, the teacher who is the petitioner in this case, James Porter, Sr., presented to this court his petition for a writ of mandamus to be directed to the respondents, the board of public instruction and the superintendent of public instruction of Duval County, praying that the respondents be required to issue to him a contract as a teacher for the 1961-1962 term. This court issued a rule requiring the respondents to show cause why an alternative writ of mandamus should not issue, and the respondents filed a return thereto. A hearing on the petition and the return was held before the court on January 19, 1962 (postponed from January 4, 1962, at the request of the parties).

The relevant facts are not in dispute. At the hearing before the court, the respondents board of public instruction (hereafter called school board) and superintendent of public instruction (hereafter called school superintendent or superintendent) agreed that the factual allegations in the return of the school board and superintendent are true. Their disagreement is as to the law to be applied to those facts.

The teacher holds a teacher's certificate issued by the state department of education, valid for the period July 1, 1959 to June 30, 1964, making him eligible for employment as a teacher of cabinet making by the school board and superintendent. He was employed by them in that capacity during the 1960-1961 school year, and was eligible to be re-employed for the 1961-1962 school term.

On May 12, 1961, the school superintendent sent to the teacher a letter (a copy of which is attached to the petition) stating that the superintendent's recommendation that the teacher be reappointed for the 1961-1962 school year had been approved, and that the teacher's contract would be sent to the teacher at the earliest possible date.

On July 7, 1961, the director of personnel of the Duval County school system sent to the teacher a letter (a copy of which

is attached to the return), on a school board letterhead, stating that a recent survey of the vocational program at the school where the teacher had been teaching revealed that the number of pupils in the day program had been steadily diminishing, that the various classes would be combined so that only two teachers would be employed, and that the teacher would not be one of the two employed.

No contract was sent to the teacher. He was not employed as a teacher for the 1961-1962 school term.

The controversy between the teacher on the one hand, and the school board and superintendent on the other hand, boils down to this — the teacher asserts that when he was duly nominated as a teacher of cabinet making for the new school term, and his nomination was duly approved by the school board, and he was duly notified of that by the school board through the school superintendent, under the law he had a right to the employment by virtue of an implied contract, whether he ever received a written contract or not.

The school board and superintendent contend first that a contract with a teacher is like any other contract in that it involves an offer and an acceptance of the offer, and that if the school board's initial letter is said to be an offer of employment, the teacher did nothing to accept it before the offer was withdrawn by the later letter from the director of personnel, so that they were not obligated to enter into a written contract of employment with him.

The school board and superintendent contend second that, if it be assumed (contrary to their first contention) that they were obligated to enter into a contract of employment with the teacher, the average daily attendance of pupils in the teacher's class had fallen below the 10 pupils required to about half that number, so that any contract made with the teacher would under applicable regulations have been conditional on a minimum number of pupils attending the teacher's class, and that under the statute law the school board, faced with declining enrollment in separate classes in cabinet making, and impelled thereby to combine classes and eliminate some teacher, had the final decision as to which teacher to eliminate.

The teacher points to various pertinent provisions of the Florida Statutes — §231.35(2), making it the duty of the school board through the superintendent "to notify in writing each person subject to annual reappointment whether or not he has been reappointed for the ensuing year"; §236.02(3), making it the duty of a county to "Notify in writing all instructional per-

sonnel concerning reemployment by the times prescribed by law; provide each...member of the instructional staff, at least one month before schools begin,...with a written contract providing for the payment of a definite salary as prescribed by law;" and §230.23(5)(f), requiring the county school board to "Designate positions to be filled,...and provide for the appointment of employees...subject to the requirements of chapter 231", and in so doing to "Provide written contracts for all regular members of the instructional staff. All contracts with members of the instructional staff shall be in accordance with the salary schedule adopted by the county board and shall be in writing for definite amounts and for definite terms of service and shall specify the number of monthly payments to be made."

The teacher relies most heavily on the statute last cited, prescribing that a teacher's contract shall be "for definite amounts and for definite terms of service."

The teacher calls the attention of the court to the decision in Board of Public Instruction v. Connor (Fla. Sup. Ct. 1941), 4 So.2d 382, 385, wherein it was held that when a teacher was nominated for appointment by the school trustees, and the school board "declined or refused, without legal cause or reason, to appoint" the teacher but "employed another teacher" in his place —

"The contract of employment impliedly existed as a matter of law when the nomination as teacher was made and presented to the Board...The mere inaction or arbitrary refusal of the Board to discharge its statutory duty when the trustees' nomination of the [teacher] was presented to it cannot affect the right of the [teacher] to recover. It is under such conditions and circumstances from the acts and conduct of the parties that the law establishes an implied contract. The execution of a contract by the Board with the [teacher] was not absolutely essential . . . but the execution at the most was directory and not mandatory. We have here an implied contract arising as a matter of law upon the reasonable assumption by the trustees and the [teacher] that the Board would discharge its statutory duty and execute with the [teacher] the express contract as contemplated by the nominating authority. The acts, conduct, and circumstances surrounding the parties established and created the implied legal duty of the Board to follow the law."

The school board and superintendent point to another pertinent provision of the Florida Statutes: §231.36(2), providing that —

"Whenever a county board is required to or does consolidate its school program at any given school center by bringing together pupils theretofore assigned to separate schools, the county board may determine on the basis of [certain] criteria from its own personnel, and any other certificated teachers, which teachers shall be employed at this school center, and any teacher no longer needed may be dismissed. The decision of the board shall not be controlled by any previous contractual relationship. In the evaluation of these factors the decision of the county board of public instruction shall be final."

The school board and superintendent also drew attention to Florida Statutes §229.06, providing that — "All rules and regulations and minimum standards adopted or prescribed by the state board in carrying out the provisions of the school code shall, if not in conflict therewith, have the full force and effect of law"; and attach to their return copies of regulations 611.3, 657.1, 657.2, and 164.1 of the state board of education prescribing that — "vocational classes [must] maintain a minimum average daily attendance of 10" pupils, and that — "No [teacher's] contract form shall indicate ... any uncertainty with reference to ... the duration of the period of service, except ... where membership in a school or program is so unstable that it might be necessary to discontinue classes because of lack of pupils, in which latter case the contract may be stated to be effective at the option of the board conditional on a minimum number of pupils."

If this case involved the usual situation, that has given rise to so much of the teacher v. school board litigation, in which a teacher is duly nominated and a politically-motivated school board refuses or fails to approve but instead chooses some other certificated teacher for the same post (perhaps retitling the post as a subterfuge), this court would require the school board and superintendent to employ the teacher, as was done in Board of Public Instruction v. Connor, supra.

Here, however, the situation is different. The number of pupils attending this teacher's classes fell much below the minimum prescribed by the state board of education. The only logical course the school board could follow was to combine classes, employ fewer teachers.

The court is inclined to think that the position of the teacher is probably well taken in one respect: the initial letter notifying the teacher that he would be reappointed may well have created an implied contract as effective as a written contract would be.

But any written contract, and consequently any implied contract, could have and doubtless would have contained a clause making it "conditional on a minimum number of pupils" in the teacher's class — if the regulations of the state board referred to above are valid. This court holds that those regulations are valid, rejecting the teacher's contention that those regulations are in conflict with the statutes he cites and therefore are invalid. Those regulations may be in conflict with the statutes the teacher cites, standing alone, but they are not in conflict with the statute cited by the school board and superintendent, and this court must read all the cited statutes together.

And in any event — whether the teacher had an implied contract or not, whether the teacher was entitled to a written contract or not, and whether the written contract could or could not validly have contained a clause making it conditional on a minimum number of pupils attending the class — under the statute cited by the school board and superintendent they could at any time have combined classes and eliminated the teacher, as they did.

Since they could do this after making a written contract with the teacher, even if that written contract contained no "conditional" clause, they could certainly do it before making a written contract with him.

There is no contention here that the school board and superintendent acted in bad faith, or did not actually combine classes and eliminate a teacher's position. Indeed, it is not disputed by the teacher that the average daily attendance in his class fell to almost half of the required minimum during the 1960-1961 school term. The teacher contends that it is not a certainty that the same would be true during the new term, but that is a matter with reference to which the school board and superintendent, rather than this court, are empowered by law to extrapolate.

The teacher contends that the second letter to him, written by the director of personnel, cannot be considered a notification from the school board through the superintendent. The court cannot subscribe to that view, since in as large a school system as the one involved here various persons perform various delegated functions under the over-all direction of the school board and superintendent, and there is no indication of lack of authority — if, indeed, it is considered that there is any statutory requirement that a teacher be notified of his elimination in any particular manner.

The Supreme Court's decision in Board of Public Instruction v. Connor, supra, is carefully predicated upon the recital that

34

the school board "without legal cause or reason" declined to appoint a duly nominated teacher. Here the school board had "legal cause or reason."

The teacher desires this court to look only to the statutes cited by him. The very statute on which the teacher relies most heavily, §230.23(5), specifically says it is the duty of the school board to make the contracts "subject to the requirements of chapter 231," and it is familiar law that a court should read all pertinent statutes together, including §231.36(2) relied on by the school board and superintendent.

This court could reach a decision in favor of the teacher only by utterly ignoring §231.36(2).

It would be an act of manifest inutility for this court to require the school board and superintendent to make a written contract with the teacher, with or without a "conditional" clause in it, or declare that the teacher had an implied contract, and simultaneously to hold that they could, under the circumstances here obtaining, dismiss the teacher at any time, and did so.

Upon consideration, it is accordingly ordered that the petition for writ of mandamus is denied.